IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID D. RICHARDSON,

    Plaintiff,

v.

PRIMECARE MEDICAL, INC. et al.

    Defendants.

CIVIL ACTION
NO. 16-5490

## OPINION

**Slomsky, J.**                                                                                                                                      July 10, 2017

### I.    INTRODUCTION

Plaintiff David D. Richardson, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights arising out of medical treatment he received while incarcerated at Chester County Prison (the "Prison"). (Doc. No. 5.) Defendants are PrimeCare Medical, Inc. ("PrimeCare") and Karen Murphy, who was employed by PrimeCare as the Health Services Administrator during the time the alleged incident occurred. (Id.) PrimeCare provides medical services to inmates housed at Chester County Prison pursuant to a contract with the Prison. (Id. at 1-2.)

### II.    BACKGROUND

On March 18, 2016, Plaintiff was arrested by the West Chester Police Department and charged with various drug offenses. (Id. at ¶ 7.) After preliminary arraignment, Plaintiff was committed to the Prison in lieu of bail. (Id. at ¶ 8.) On September 19, 2016, Defendant Murphy "summoned" Plaintiff to the prison's infirmary in order to obtain work approval from Plaintiff's psychiatrist. (Id. at ¶ 9.)

1

After he received work approval from the psychiatrist, Plaintiff asked his psychiatrist for information about the side effects of his prescribed medication. (Id. at ¶ 10.)[1] Plaintiff wanted this information so that he could "make an informed decision whether to accept or reject continued treatment" on the medication. (Id. at ¶ 11.) However, Plaintiff alleges that at some point he made the same request to Defendant PrimeCare and Defendant Murphy interjected and stated "we, PrimeCare, do not provide such service." (Id. at ¶ 12.)

On November 9, 2016, Plaintiff, proceeding pro se, initiated this action against Defendants. (Doc. No. 5.) On December 28, 2016, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 13.) On January 11, 2017, Plaintiff filed a Response in Opposition. (Doc. Nos. 14, 15.) The Motion to Dismiss is now ripe for a decision.[2]

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[1] The record is devoid of facts on whether the psychiatrist refused to respond to the request of Plaintiff or responded without providing the information requested.

[2] In reaching a decision, the Court has considered the Complaint (Doc. No. 5), the Motion to Dismiss the Complaint (Doc. No. 13), and Plaintiff's Response in Opposition (Doc. Nos. 14, 15).

2

liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Additionally, "[a] document filed pro se is to be liberally construed, and a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that the pro se case could not be dismissed on the

3

ground that the petitioner's allegations of harm were too conclusory) (internal quotations and citations removed).

IV. ANALYSIS

In the Complaint, Plaintiff brings an Eighth Amendment claim and a Fourteenth Amendment substantive due process claim against Defendants pursuant to 42 U.S.C. § 1983 (commonly referred to as "Section 1983"). The Complaint specifically alleges: (1) a violation of the "right to be provided with information regarding the side-effects of prescribed medications in order to afford plaintiff an opportunity to make an informed decision whether to accept or reject continued treatment" against Karen Murphy, and (2) a Monell claim for a violation of Plaintiff's rights pursuant to a policy or custom of PrimeCare. (Doc. No. 5 at ¶¶ 13, 26-27.)

A plaintiff raising a claim under Section 1983 must allege a violation of a right secured by the Constitution or the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. West v. Adkins, 487 U.S. 42, 48 (1988). The parties do not address whether Defendants are considered state actors. However, pursuant to the United States Supreme Court holding in West v. Atkins, Defendants are state actors due to their contract with Chester County Prison to provide medical services to inmates incarcerated there, and for this reason they act under color of state law. 487 U.S. at 54-58. Moreover, no federal law is implicated by the actions of Defendants. Accordingly, the focus here is on whether Defendants violated Plaintiff's constitutional rights.

Plaintiff alleges that Defendants' refusal to inform him of the side effects of his prescribed medications resulted in a violation of his Eighth and Fourteenth Amendment rights.[3] (Doc. No. 5 at ¶¶ 13-22.)

---

[3] The Eighth Amendment protection from cruel and unusual punishment applies to convicted prisoners, whereas the Fourteenth Amendment right to personal bodily integrity protects

## A. Eighth Amendment Claim

To state a claim for damages against Defendants under the Eighth Amendment, Plaintiff must demonstrate a deliberate indifference to a serious medical condition. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). The standard established in Estelle has two prongs: (1) deliberate indifference on the part of prison officials, and (2) the prisoner's medical needs must be serious. Id. Plaintiff was being treated by a psychiatrist and Defendants do not address or dispute the seriousness of Plaintiff's medical needs. Therefore, the analysis centers on the deliberate indifference prong of Estelle.

### i. Deliberate Indifference

Deliberate indifference requires that a defendant "knows of and disregards an excessive risk to an inmate's health or safety." Dominguez v. Governor of Pennsylvania, 574 F. App'x 63, 65 (3d Cir. 2014). The prison official "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and draw the inference." Natale v. Camden Cnty Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). However, "[n]either a prisoner's subjective dissatisfaction with the care provided nor his disagreement with medical staff's professional judgment is . . . sufficient to establish deliberate indifference." Davis v. Jail, No. 15-8154, 2016 WL 676374, at *3 (D.N.J. Feb. 18, 2016) (citing Hairston v. Director Bureau

---

pretrial detainees who are in custody but have not yet been convicted of a crime. Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). It is well-settled that pretrial detainees are entitled to as much protection as convicted prisoners. Hubbard v. Taylor, 399 F.3d 150, 165 (3d Cir. 2005). The Third Circuit has consistently held that when proceeding under the Fourteenth Amendment, the Eighth Amendment serves as a useful analogy. See, e.g., Boring, 833 F.2d at 471-72; King v. Cnty of Gloucester, 302 F. App'x 92, 96-97 (3d Cir. 2008). The record here, however, is devoid of information on whether Plaintiff at the time he filed his § 2254 Petition or at any time thereafter was incarcerated as a pretrial detainee or as a person convicted of an offense.

of Prisons, 563 F. App'x 893, 895 (3d Cir. 2014)); see also White v. Napolean, 897 F.2d 103, 110 (3d Cir. 1990)).

Here, Plaintiff has not established that Defendant Murphy acted with deliberate indifference. Plaintiff argues that he was denied his right to accept or reject continued treatment when "Defendant Murphy refused to answer plaintiff's questions regarding the side-effects of prescribed [medications]." (Doc. No. 5 at ¶ 14.)

As an administrator, Defendant Murphy was not actively involved in Plaintiff's psychiatric treatment. (Id. at 2; Doc. No. 13-2 at 7.) Plaintiff asked his psychiatrist for information about the side-effects of the prescribed medication. (Doc. No. 5 at ¶ 10.) Even accepting the facts Plaintiff alleged as true, Defendant Murphy's statement—"we, PrimeCare, do not provide such service"—does not amount to a denial of information about the medication because she is not Plaintiff's psychiatrist or treating physician. Plaintiff does not allege that he was refused this information from his psychiatrist or treating physician, or that his psychiatric treatment was disturbed in anyway. (See id.) Defendant Murphy, as the Health Services Administrator, was not tasked with treating Plaintiff, and thus Plaintiff has failed to state a plausible claim of relief against her. Consequently, the claims against Defendant Murphy will be dismissed.

### ii. Monell Claim against PrimeCare

Plaintiff raises a claim against PrimeCare based on Defendant Murphy's actions. (Id. at ¶¶ 20-21.) The United States Supreme Court has held that a municipality or local government entity can be held liable pursuant to Section 1983 under certain limited circumstances, but not on the basis of respondeat superior. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Therefore, a municipal entity may not be held liable under Section 1983 solely

because one of its employees acts in violation of the Constitution. Rather, Monell established that a municipality is subject to liability under Section 1983 only when the violation of a plaintiff's federally protected rights can be attributable to the execution of a government's policy, practice, or decision of a final municipal policy maker. Id. at 690-91.

In order for a corporation providing prison health care to be liable under Section 1983, a plaintiff must "provide evidence that there was a relevant . . . policy or custom, and that the policy caused the constitutional violation they allege." Natale, 318 F.3d at 583-84.

> Not all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir.1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bryan County, 520 U.S. at 404.

Natale, 318 F.3d at 584.

Here, Plaintiff states that "Defendant PrimeCare did not have a policy in place which prevented Defendant Murphy from violating plaintiff's Constitutional right regarding information of side-effects of prescribed medications." (Doc. No. 5 at ¶ 26.) Plaintiff argues that PrimeCare violated his rights for failure to affirmatively act after being put on notice of Defendant Murphy's conduct. (Id. at ¶¶ 27-31.)

Plaintiff has failed to establish a Monell claim against PrimeCare. "[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). As discussed above, Defendant Murphy's single statement—"we, PrimeCare, do not provide such service"—does not amount to a deprivation of Plaintiff's

constitutional rights for which relief can be granted. Moreover, the statement does not amount to a custom or policy that is so widespread as to have the force of law. It is merely a statement made by the Health Services Administrator, not by the psychiatrist or treating physician. Therefore, Plaintiff has failed to establish a claim for relief against Defendant PrimeCare, and the claim will be dismissed.

### B. Fourteenth Amendment Claim

Plaintiff argues that Defendant Murphy's refusal to answer his questions was the "moving force behind [his] injuries" and it "shocked the conscience." (Doc. No. 5 at ¶ 22.) Plaintiff urges the Court to focus on his substantive due process right to refuse treatment.[4] (Doc. No. 15 at 6.) However, under the more-specific-provision rule, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Betts v. New Castle Youth Development Center, 621 F.3d 249, 260 (3d. Cir. 2010) (citing United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)). Here, the appropriate standard is found under the Eighth Amendment, as discussed above, instead of substantive due process.

Further, neither the United States Supreme Court nor the Court of Appeals for the Third Circuit has determined whether the Fourteenth Amendment Due Process Clause provides additional protections to pretrial detainees beyond those provided by Eighth Amendment to

---

[4] In his response to the Motion, Plaintiff argues that the substantive due process violations here are "so clearly devoid of any legitimate governmental purpose that they would offend the Constitution regardless of procedural protections." (Doc. No. 15 at 7.) He relies on Cnty of Sacramento v. Lewis, 523 U.S. 833 (1998) in arguing that his claim should be treated as a substantive due process right to refuse treatment. (Id. at 6-7.) This case is unconvincing as it applies a higher standard of fault than deliberate indifference when police officers engage in a high-speed pursuit. See Lewis, 523 U.S. at 843-52. The instant case is clearly distinguishable on the facts.

convicted prisoners. King v. Cnty of Gloucester, 302 F. App'x 92, 97 (3d Cir. 2008). Instead, the Third Circuit has held that "[i]n order to state a Fourteenth Amendment claim of inadequate medical attention upon which relief may be granted, a plaintiff must allege that a defendant acted with deliberate indifference to his serious medical needs." Lenhart v. Pennsylvania, 528 F. App'x 111, 115 (3d Cir. 2013). Thus, in this case, the deliberate indifference standard found in Estelle v. Gamble governs. Because the Court has already determined that Plaintiff has not established Defendants acted with deliberate indifference, Plaintiff's Section 1983 claim based on the Fourteenth Amendment also will fail.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. No. 13) will be granted. An appropriate Order follows.